IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL VALERO,<br><br>         Plaintiff,<br><br>   vs.<br><br>BRYANT, LaFAYETTE AND ASSOCIATES, LLC,<br><br>         Defendant. | 1:10-cv-01174 OWW GSA<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR DEFAULT JUDGMENT<br><br>(Document 13 ) |

Plaintiff Jill Valero ("Plaintiff") filed the instant Motion for Default Judgment against Defendant Bryant, LaFayette and Associates, on February 1, 2011.[1]  No opposition to the motion was filed.  A damages hearing was held on April 8, 2011.  Plaintiff and Plaintiff's counsel, Jin Kim, appeared telephonically.  Having considered all of the pleadings and the evidence in this case, the Court recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART.

///

---

[1] Plaintiff filed an Ex Parte Application for Default Judgment.  While service of a default judgment is not required under the Federal Rules of Civil Procedure or this Court's Local Rules, the Court required that the application be served on Defendant in an abundance of caution.  *See*, Fed. R. Civ. P. 55(b)(2) (requiring that written notice of an application for default judgment be served upon the party against whom judgment is sought only if that party "has appeared in the action"); Local Rule 135(d)(excusing parties from serving documents when parties are held in default for failing to appear unless the document asserts new or additional claims); *See also*, (Docs. 14 and 15).

1

# BACKGROUND

On June 29, 2010, Plaintiff filed a complaint alleging eight violations of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, et seq. (Hereinafter, "FDCPA") (first through eighth causes of action), five violations of California's Rosenthal Fair Debt Collect Practices Act, Cal. Civ. Code § 1788 et seq (Hereinafter, "Rosenthal Act") (ninth through thirteenth cause of action), and invasion of privacy (fourteenth cause of action). Plaintiff's complaint requests actual and statutory damages under the FDCPA and the Rosenthal Act, attorney's fees, damages for the invasion of privacy cause of action, and other relief the Court deems appropriate.

Defendant was served with a copy of the complaint on November 24, 2010. (Doc. 9). Defendant failed to respond to the complaint or otherwise appear in this action. On December 15, 2010, Plaintiff requested entry of default against Defendant. (Doc 10). The Clerk of the Court entered Defendant's default on January 28, 2011. (Doc. 12). On February 1, 2011, Plaintiff filed the instant motion. (Doc. 13). Plaintiff seeks a total award of $19,835.00 that includes:

1. $15,000.00 in actual damages for emotional distress under the FDCPA;
2. $2,000.00 in statutory damages ($1,000.00 under the FDCPA and $1,000.00 under the Rosenthal Act);
3. Attorneys' fees in the amount of $2,450.00; and
4. Costs in the amount of $385.00.[2]

# DISCUSSION

Plaintiff moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that judgment may be entered:

> (2) By the Court. In all other cases, the party must apply to the court for default judgment. A default judgment may be entered against an infant or incompetent person only if represented by a general guardian, committee, conservator, or other like fiduciary who has appeared. If the party against whom default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The

---

[2] Although Plaintiff's complaint includes a cause of action for invasion of privacy she is not requesting relief based on this cause of action in this motion. Therefore, the Court will not address this claim.

>court may conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate judgment, it needs to : (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc. 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987). While the allegations related to liability are true, the amount of damages suffered are ordinary not. Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc. 722 F.2d at 1323. However, a judgment by default may be entered without a hearing on damages if the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits. Id. In this case, Plaintiff is seeking a considerable amount in actual/emotional distress damages which are not capable of being ascertained from the declaration submitted. Accordingly, the Court held a damages hearing on April 8, 2011.

A.     Plaintiff is Entitled to Entry of Default Judgment

Factors which may be considered by courts in exercising discretion regarding the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

The Court has evaluated the factors listed above and finds that the facts in this case weigh heavily in favor of granting default judgment. First, Plaintiff would suffer prejudice if the court does not enter default judgment because she would have no other means of recovery. Second, as outlined below, Plaintiff's complaint properly alleges the necessary elements of each cause of action which satisfies the second and third factors; the merits of the substantive claim, and the sufficiency of the complaint. The fourth factor is also met since there is a significant amount of money at stake in this action in the form of actual damages, which as discussed below, are authorized under law.

3

The fifth factor, the possibility of a dispute concerning the material facts is also met. Defendant never appeared in this action. Therefore, Defendant is not in a position to defend the action, or to dispute material facts. Given Defendant's non-appearance, the sixth factor is also satisfied since there is also no evidence that default resulted from excusable neglect. With regard to the last factor, although cases should be decided on the merits when reasonably possible, such preference alone is not dispositive. PepsiCo Inc., v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant's failure to respond and defend this action, renders a decision on the merits impractical.

B.   Sufficiency of the Complaint and Damages

   **1. The FDCPA**

The FDCPA was enacted in response to inadequate laws to redress injuries to consumers from abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692. The FDCPA broadly prohibits: (1) unfair or unconscionable collection methods, (2) conduct which harasses, oppresses, or abuses any debtor, and (3) any false, deceptive, or misleading statements in connection with the collection of a debt. 15 U.S.C. § 1692d-f.   To bring a valid FDCPA action, the defendant must be a "debt collector" and the plaintiff must be a "consumer" within meaning of FDCPA. 15 U.S.C.A. § 1692a.   The FDCPA creates a private right of action against a debt collector. 15 U.S.C. § 1692k.

According to the complaint, Defendant, a debt collector, unlawfully called Plaintiff several times regarding the collection of a debt. Specifically, on or around April 29, 2010, Defendant called Plaintiff and failed to identify itself as a debt collector. Instead, Defendant represented that it was calling about a "legal notice" and it had a file containing Plaintiff's address history, social security number, date of birth, and known aliases. Defendant threatened to sell Plaintiff's personal information at a public auction.

On or about May 3, 2010, Defendant telephoned Plaintiff again and left a voice message. Defendant failed to identify itself as a debt collector, indicated that it had Plaintiff's personal information, and threatened to sell the information at a public auction.

4

On or about May 6, 2010, Defendant telephoned Plaintiff a third time and failed to identify itself as a debt collector.  Defendant spoke to Plaintiff in a harassing, oppressive, intimidating, and/or abusive manner including laughing at Plaintiff.

On or about May 14, 2010, Defendant telephoned Plaintiff's brother, left a message about the debt, and falsely represented itself as a law firm.  Plaintiff alleges that Defendant had neither the intent or the ability to sell Plaintiff's personal information at a public auction, and that Defendant's actions caused Plaintiff substantial anxiety and stress.  Therefore, the allegations in complaint and Defendant's default conclusively establish liability for violating the FDCPA.

### a. Actual Damages based on the FDCPA

Plaintiff requests actual damages in the amount of $15,000.  Under the FDPCA actual damages may be awarded to a Plaintiff as a result of a defendant's failure to comply with the Act.  15 U.S.C. § 1692k(a)(1).  However, how to interpret the "actual damage" language with respect to emotional distress is a controversial issue that has not yet been addressed by the Ninth Circuit.  Bolton v. Pentagroup Financial Services, LLC., 2009 WL 734038 at *10-11 (E.D. Cal., Mar 17, 2009); Costa v. National Action Financial Services, 2007 WL 4526510 at *7-8 (E.D. Cal., December 19, 2007).

District courts nationally have issued conflicting decisions regarding this issue. Some courts have determined that under the FDCPA a Plaintiff is not required to meet the state law standards for intentional infliction on emotional distress ("IIED"); Perkons v. American Acceptance, LLC, 2010 WL 4922916 (D. Ariz. 2010); Riley v. Giguiere, 631 F. Supp. 2d 1295, 1314-1316 (E.D. Cal., 2009).  Alternatively, other courts require that a plaintiff prove a claim for IIED under state law in order to collect damages for emotional distress.  Bolton v. Pentagroup Financial Services, LLC., 2009 WL 734038 at *10-11  (Plaintiff's transitory stress failed to meet state IIED standard); Costa v. National Action Financial Services, 2007 WL 4526510 at *7-8 (same); See also Pflueger v. Auto Finance Group, Inc., 1999 WL 33738434 at *4 (C.D. Cal., 1999); cf. Carrigan v. Central Adjustment Bureau, Inc., 502 F. Supp. 468, 470-471 (N.D. Ga. 1980) (holding Plaintiff's FDCPA's claim for intentional infliction of mental distress met state requirements under Florida tort law); Venes v.

5

Professional Service Bureau, Inc., 353 N.W. 2d 671, 674-675 (Minn. Ct. App. 1984) (finding Plaintiff satisfied state elements of IIED and could thus recover emotional distress damages).

This Court will apply the California IIED standard. See, Bolton v. Pentagroup Financial Services, LLC., 2009 WL 734038 at *10-11. Under California law, to prove a claim for IIED, a plaintiff must show: (1) extreme and outrageous conduct by the defendant; (2) extreme or severe emotional distress to the plaintiff; and (3) actual and proximate causation between the two. Spinks v. Equity Residential Briarwood Apartments, 171 Cal.App.4th 1004, 1045, Cal. App 6 Dist. (2009) citing Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001, 25 Cal. Rptr. 2d 550 (1993).

To be outrageous, the defendant's conduct must be either intentional or reckless, and it must be so extreme as to exceed all bounds of decency in a civilized community. Id. "Behavior may be considered outrageous if a defendant : (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress, or (3) acts intentionally or unreasonably with the recognition that the actions are likely to result in illness through mental distress." Kiseskey v. Carpenters' Trust for So. California, 144 Cal. App. 3d 222, 230, 192 Cal Rptr. 492  Cal. App. 2 Dist. (1983).  Courts have long recognized in collection cases that the very nature of collection efforts often cause a debtor to suffer emotional distress.  Bundren v. Superior Court, 145 Cal. App. 3d 784, 193 Cal. Rptr 671 (1983); Bowden v. Spiegel, 96 Cal. App. 2d 793, 789 (1950).  To be actionable as an IIED claim, the conduct must go beyond "all reasonable bounds of decency." Bundren v. Superior Court, 145 Cal. App. 3d at 789.

When considering whether a Plaintiff has suffered severe emotional distress, courts have noted that "complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people.   The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.  The intensity and duration of the distress are factors to be considered in determining its severity.  It appears therefore, that in this context, severe emotional distress means, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher v. Western National Life Ins. Co., 10 Cal.App.3d 376,

397, 89 Cal.Rptr. 78, Cal.App.4th Dist. (1970). Such injury may include all highly mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. Golden v. Dungan 20 Cal. App.3d 295, 311, 97 Cal. Rptr. 577 (1971); Fletcher v. Western Life Ins., Co., 10 Cal. App. 3d at 397.

There is no requirement under California law that a Plaintiff provide corroborating evidence in order to establish a claim for emotional distress.[3] However, a damages award cannot be based solely on conjecture or speculation. There must be competent proof of emotional distress suffered by the Plaintiff. Austero v. Washington National Ins. Co. 132 Cal.App.3d 408, 417, 182 Cal.Rptr. 919, (1982) disapproved on another ground in Brandt v. Superior Court, 37 Cal.3d 813, 816-817, 210 Cal.Rptr. 211, 693 P.2d 796. (1985). Testimony of the plaintiff alone will suffice. Tan Jay International, Ltd. v. Canadian Indemnity Co. 198 Cal.App.3d 695, 708, 243 Cal.Rptr. 907 (1988); see also, Young v. Bank of America National Trust & Savings Assoc., 141 Cal. App. 3d 108, 190 Cal. Rptr., 122 (1983) (Plaintiff's testimony that she experienced embarrassment, shame, helplessness, nervousness, headaches, insomnia, and frustration because of bank's failure to adjust her credit card was sufficient evidence warranting jury instruction on emotional distress damages).[4]

///
///

---

[3] In other circuits involving violations of the FDCPA, when courts have not required a Plaintiff to meet the more stringent state IIED requirements, a plaintiff alleging intangible loss must set forth evidence with specificity including corroborating testimony or medical or psychological evidence in support of the damage award. Cousins v. Trans Union Co., 246 F. 3d 359, 371 (5th Cir. 2001). Unsupported self-serving testimony by a plaintiff is not sufficient. Wantz v. Experian Info. Systems, 386 F. 3d 829, 834 (7th Cir. 2004), aborgated on other grounds in Safeco Ins. Co. of America v. Burr, 551 U.S. 47 (2007).

[4] While the Ninth Circuit has not specifically ruled on whether corroborating testimony or other evidence is necessary to establish emotional distress damages pursuant to FDCPA, the court has held that emotional distress damages generally may be proven in a number of ways, including through corroborating medical evidence or non-expert testimony establishing "manifestations of mental anguish [and the occurrence of] significant emotional harm. Dawson v. Wash. Mut. Bank., F.A. 390 F. 3d 1139, 1149-50 (9th Cir. 2004) (finding that damages for emotional distress are available under bankruptcy law when a creditor violates the automatic stay that follows from the filing of a bankruptcy petition.). Emotional distress damages can also be readily apparent without corroborative evidence where a plaintiff was a victim of egregious conduct or where the "circumstances make it obvious that a reasonable person would suffer significant emotional harm. Id. at 1150; See also, Zhang v. American Gem Seafoods, 339 F. 3d 1020, 1040 (9th Cir. 2003) (upholding emotional distress damages based only on testimony.); Fausto v. Credigy Services Corp., et al., 598 F. Supp. 1049 (N.D. Cal., Feb. 17, 2009).

      *b.*    *Plaintiff's Testimony*

Plaintiff testified that Michael Stern, Defendant's representative, left approximately ten voice mail messages on her telephone machine and represented he was an attorney. During these communications, Mr. Stern stated he was calling about a legal notice and that he had a file containing Plaintiff's personal information that would be sold a public auction if she did not return the phone call within twenty four hours. Plaintiff testified that her personality changed dramatically after these contacts. She was terrified that her identity would be stolen, that her bank accounts would be depleted, and that she would suffer adverse consequences to her credit history.

Additionally, Plaintiff received another voice mail message from Defendant at which time she was informed that "Plaintiff was not fooling anyone but herself." Defendant's representative broke into a maniacal laugh and demanded that Plaintiff call him back. After hearing this message, Plaintiff became fearful for her safety and began checking the doors and windows in her apartment to ensure they were adequately locked. Plaintiff remains terrified that a representative from Defendant's firm will show up on her doorstep and threaten her in person. She now carries pepper spray and is constantly checking to see if someone is following her. Although Plaintiff was fearful, she has not had any further contact with Defendant or a representative from Defendant's firm.

Finally, Defendant has called and yelled at Plaintiff's family members including her father-in-law and brother. Plaintiff's father-in-law suffers from heart problems, high blood pressure, and other severe medical problems. Plaintiff believes that these interactions adversely affected her father-in-law's health and believes that these calls have resulted in a breakdown in her familial relationships with both her father and brother.

As a result of the above , Plaintiff has not been sleeping well. She wakes up in the middle of the night and is unable to sleep. She has nightmares that her bank accounts have been emptied and that all of her money is gone because of identity theft. However, Plaintiff has not sought mental health or medical treatment as a result of these incidents.

      *c.*    *Amount of Actual Damages Under the FDCPA*

Based on Plaintiff's testimony, the Court finds that she has met the state requirements of an

IIED claim as Defendant's conduct goes beyond all reasonable bounds of decency. Defendant engaged in outrageous conduct including making several telephone calls to Plaintiff, making inappropriate threats, and contacting Plaintiff's family members. Defendant's actions caused Plaintiff severe emotional distress resulting in anxiety and fear.

However, an examination of the cases reveals that $15,000.00 is on the high end of the damages award spectrum as most district courts have awarded between $1,000 and $5,000 for similar conduct.[5] See, Kajbos v. Maximum Recover Solutions, Inc., 2010 WL 2035788, at *3 (D.Ariz. 2010) ($5,000 awarded in actual damages per plaintiff when plaintiff's emotional distress and mental anguish resulted in a fear of answering the telephone, sleeplessness, feelings of hopelessness, pessimism, and nervousness which impacted jobs, personal relationships, and created marital instability.); Perkons v. American Acceptance, LLC., 2010 WL 4922916 (D. Ariz. 2010) ($5,000 awarded in emotional distress damages when Plaintiff suffered stress, anxiety, sleeplessness, depression, and weight gain resulting in a heart condition and migraines) Baruch v. Healthcare Receivable Management, Inc., 2007 WL 3232090 ( E.D.N.Y. 2007) ($5,000 awarded when consumer received numerous threatening telephone calls and letters and as a result lost sleep, became depressed and suffered heart problems); Cooper v. Ellis Crosby & Assoc., Inc.,  2007 WL 1322380 (D. Conn. 2003) ($3,000 emotional distress damages when debt collector misrepresented he was an investigator from the bank, threatened to call Plaintiff's boss and to subpoena Plaintiff's hard drive on her computer); Gervais v. O'Connell, Harris & Assoc., Inc., 297 F. Supp.2d 435 (D. Conn. 2003) ($1,500 emotional damages awarded when defendant withdrew $2,500 from debtor's bank account and Plaintiff did not seek medical attention but was taking anxiety medication for condition unrelated to Defendant's actions); Chiverton v. Fed. Finance Group Inc., 399 F. Supp. 2d 96 (D. Conn. 2005) (Damages of $5,000 awarded for consumer's emotional distress under the FDCPA for debt collection practices that lasted over a period of several months which included repeated phone calls to consumer's workplace, leading consumer to fear losing his job, as well as directly contacting

---

[5] These cases applied the federal FDPCA standard for damages rather than the state law standards for intentional infliction of emotional distress.

consumer's supervisor); Teng v. Metropolitan Retail Assoc., 851 F. Supp. 61 (E.D.N.Y. 1994 ) ($1,000 awarded when debt collector called plaintiff's place of employment several times, and obtained the phone number of plaintiff's supervisor, and identified himself as a city marshal threatening to take away plaintiff's furniture).

Plaintiff has cited Morisaki v. Davenport, Allen & Malone, Inc., 2010 WL 3341566 (E.D. Cal., 2010) for the proposition that Plaintiff is not required to establish a state IIED cause of action to receive actual damages under the FDCPA.  In Morisaki, the plaintiff was awarded $75,000.00 after she was harassed by debt collectors over a period of several years and the debt collector contacted several co-workers and her employer about the debt.  Morisaki v. Davenport, Allen & Malone, Inc., 2010 WL 3341566 at *6. [6]  Here, Defendant's actions were clearly violations of the FDCPA. However, the conduct only occurred over a two week period, plaintiff did not have direct contact with Defendant, nor did she need to seek treatment for her symptoms. Nevertheless she did suffer from stress, sleeplessness, anxiety, and a disruption in her personal relationships.  After considering all of these factors, Court recommends that Plaintiff be awarded $5,000 in actual damages.

                *d.*        *Amount of Statutory Damages Under the FDCPA*

Under the FDCPA, plaintiffs are entitled to statutory damages up to $1,000 pursuant to 15 U.S.C. § 1692(a)(2)(A).  A court shall consider among other factors, "the frequency and persistence of the noncompliance, and the extent to which the noncompliance was not intentional."  15 U.S. C. § 1692k(b)(1).  The Court has concluded that based on the unanswered allegations in the complaint and the nature of the allegations, Defendant's actions were intentional.  Plaintiff is entitled to $1,000 in statutory damages under this provision.

///

///

---

[6] Moreover, this Court has awarded $25,000 in actual damages when Defendant's conduct occurred over a short period of time but involved obtaining Plaintiff's personal information, contacting family members, adding his name to Plaintiff's T-Mobile account, and taking pictures of Plaintiff which resulted in exacerbating Plaintiff's pre-existing health and psychological conditions.  Hartung v. J.D. Byrider, Inc., 2009 WL 1876690 at *9-10 (E.D. Cal. 2009).

### 2. The Rosenthal Act

The Rosenthal Act requires an intent that is knowing and willing. Based on the unanswered allegations in the complaint and the nature of the allegations, Defendant's actions were intentional. Moreover, California Civil Code § 1788.17 states that every violation of the FDCPA is ipso facto violation of the Rosenthal Act. Pursuant to Cal. Civ. Code § 1788.30(b), Plaintiff is entitled to $1,000 statutory damage award based on this violation.

### 3. Attorney's Fees

The FDCPA and the Rosenthal Act specifically authorize an award of attorney's fees to a prevailing plaintiff. 15 U.S.C. § 1692k(a)(3) & Cal. Civil Code. § 1788.30 (c). The Court determines an attorney fee award by calculating the "lodestar figure" which entails taking the numbers of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Ferland v. Conrad Credit Corp., 244 F. 3d 1145 (9th Cir. 2001) (In a FDCPA case, district court must calculate awards for attorney's fees using "lodestar" method"). However, the court may enhance or reduce the lodstar figure. Fischer v. SJB-P.D., Inc., 214 F. 3d 1115 (9th Cir. 2004).

Plaintiff's counsel has requested payment at a rate of $250.00 per an hour for attorney time and $125.00 per hour for paralegal services. The total amount requested for attorney's fees is $2,450.00 which the court finds is reasonable. The Court also finds that Plaintiff's request for costs in the amount of $385.00 is also reasonable. Accordingly, the Court will recommend that Plaintiff be awarded a total of $2,450.00 in attorney's fees and $385.00 for costs.

### **RECOMMENDATION**

For the reasons discussed above, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment in favor of Plaintiff and against Defendant, be GRANTED IN PART and DENIED IN PART for a total award amount of $ 9,835.00 to be broken down as follows ;

2. Plaintiff be awarded actual damages in the amount of $ 5,000.00;

3. Plaintiff be awarded a total of $2,000.00 in statutory damages including $1,000.00 under the Rosenthal Act and $1,000.00 under the FDCPA respectively;

11

     4.     Attorney's fees be awarded in the amount of $2,450.00; and

     5.     Costs be awarded in the amount of $385.00.

These findings and recommendations are submitted to the Honorable Oliver W. Wanger, pursuant to 28 U.S.C. § 636(b)(1)(B). Within fifteen (15) court days of service of this recommendation, any party may file written objections to these findings and recommendation with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 14, 2011           /s/ Gary S. Austin
                                             UNITED STATES MAGISTRATE JUDGE